UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEE MURRAY,

    Petitioner,                                   Civil No. 2:11-CV-14007
                                                     HONORABLE NANCY G. EDMUNDS
v.                                           UNITED STATES DISTRICT JUDGE

KENNETH ROMANOWSKI,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Robert Lee Murray, ("Petitioner"), presently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for one count of assault with intent to do great bodily harm less than murder, M.C.L.A. 750.84; and being a fourth felony habitual offender, M.C.L.A. 769.12. For the reasons that follow, the petition for writ of habeas corpus is **DENIED**.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the Livingston County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On June 2, 2008, defendant had resided for two years with Barry Allmendinger in a trailer owned by Allmendinger in Livingston, Michigan. At approximately 7:20 that evening, defendant stabbed Allmendinger in the

chest. The testimony about the events leading up to, and the causes of, the stabbing varied significantly at trial. According to Allmendinger, he was sitting on the couch in the trailer living room watching television when defendant came out of his bedroom and walked toward the kitchen. Allmendinger noticed that defendant "wasn't his normal self." Defendant then urinated in a coffee pot in the kitchen, placed a knife on a table behind the couch, and stood between the back of the couch and the table. Allmendinger told defendant to put away the knife to avoid hurting himself, and continued watching television. Then, without provocation, defendant pulled back on Allmendinger's hair, and stabbed him in the chest. In contrast, defendant testified that earlier in the day, he and Allmendinger had a "heated" "verbal dispute" about a topic they had previously discussed many times. Later that evening, defendant brought out three knives from inside his bedroom, and proceeded to sharpen them. He put the knives away, and approximately one hour later, he and Allmendinger engaged in a second verbal dispute regarding the same topic. Then, at Allmendinger's request, defendant retrieved two of the knives from his bedroom and put them on a table in the living room. After additional verbal exchanges, Allmendinger punched defendant in the face and continued to assault him. Defendant obtained one of the knives and stabbed Allmendinger in self-defense.

*People v. Murray,* No. 292694, * 1 (Mich.Ct.App. November 18, 2010).

Petitioner's conviction was affirmed on appeal. *Id; lv. den.* 489 Mich. 990, 800 N.W.2d 81 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHT TO PRESENT A DEFENSE AND CROSS-EXAMINE THE COMPLAINANT, BY EXCLUDING EVIDENCE THAT THE COMPLAINANT REPEATEDLY ARGUED WITH APPELLANT OVER THE COMPLAINANT'S ALLEGED SEXUALLY INAPPROPRIATE TREATMENT OF THE COMPLAINANT'S DAUGHTER; WHERE THE ARGUMENT EXPLAINED WHY THE COMPLAINANT BECAME ENRAGED AND ATTACKED APPELLANT; FURTHER SUPPORTING APPELLANT'S CLAIM OF SELF-DEFENSE.

II. DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT TO A STATE TROOPER TESTIFYING THAT APPELLANT PROVIDING MORE THAN ONE ACCOUNT OF THE INCIDENT MEANT THAT APPELLANT WAS LYING.

III. DUE PROCESS ENTITLES APPELLANT TO A NEW TRIAL, BASED ON THE PROSECUTOR'S FAILURE TO COMPLY WITH *BRADY v.*

2

*MARYLAND* AND DISCLOSE BEFORE TRIAL THAT ONE OF THE TESTIFYING OFFICERS HAD A PRIOR CONVICTION FOR MAKING A FALSE REPORT OF A MISDEMEANOR.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through

appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

In his reply brief, petitioner contends that this Court should not use the deferential standard of review found in § 2254(d) to review his claims, because the Michigan Supreme Court, the last state court to dispose of petitioner's case, denied his application for leave to appeal by an unexplained form order without adjudicating petitioner's claims on the merits. Petitioner argues that since the Michigan Supreme Court did not adjudicate his claims on the merits, the AEDPA standard of review does not apply, thus, this Court should review his claims under a *de novo* standard of review.

This Court cannot accept petitioner's argument. The Michigan Court of Appeals issued a written opinion in which that court adjudicated all of petitioner's claims on the merits. The Michigan Supreme Court subsequently denied petitioner leave to appeal in a standard form order. Pursuant to M.C.R. 7.302(H)(3), when the Michigan Supreme Court denies an application for leave to appeal, "the Court of Appeals decision becomes the final adjudication and may be enforced in accordance with its terms." Because the

Michigan Supreme Court denied petitioner leave to appeal, the final state court adjudication of petitioner's claims was from the Michigan Court of Appeals. In reviewing a claim under the AEDPA's deferential standard of review, this Court must review "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw,* 622 F. 3d 487, 505 (6th Cir. 2010)(quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005)); *See also Barrientes v. Johnson*, 221 F.3d 741, 779 (5th Cir. 2000)("When the last state adjudication of the claim is silent or ambiguous, the federal court should look through to the last clear state decision on the matter.")(internal quotation marks omitted)). Because the Michigan Supreme Court simply denied petitioner's application for leave to appeal in an unexplained one-sentence order, this Court must "look through" this decision to the Michigan Court of Appeals' opinion, the last state court to issue a reasoned opinion, and determine whether that court's adjudication of petitioner's claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson,* 416 Fed. Appx. 501, 505 (6th Cir. 2011); *cert. den.* 132 S. Ct. 309 (2011); *See also Miller v. Stovall,* 573 F. Supp. 2d 964, 976 (E.D. Mich. 2008)("The Court Must 'Look Through' the Supreme Court of Michigan Standard Orders to the Michigan Court of Appeals Explained Decision" in determining whether the adjudication of petitioner's claims was contrary to, or an unreasonable application of clearly established federal law).

### III. Discussion

**A. Claim # 1. The right to present a defense claim.**

6

Petitioner first contends that his right to present a defense was violated when the trial court refused to allow petitioner to introduce evidence that the verbal dispute between the victim and petitioner involved allegations of sexually inappropriate behavior between the victim and the victim's minor daughter. Petitioner argues that this evidence was admissible to show the victim's bias and motive, and would have explained the victim's reason for becoming angry at petitioner, which in turn, would have established that the victim was the initial aggressor, so as to support petitioner's self-defense claim.

In rejecting petitioner's claim, the Michigan Court of Appeals noted that although the trial judge did not permit petitioner to introduce evidence of inappropriate sexual behavior between the victim and his daughter, petitioner was allowed to present evidence that the victim became "angry and upset" after arguing with petitioner, that it lead to an altercation, and that as a result, petitioner was required to use force to defend himself from the victim. *Murray,* Slip. Op. at * 3. The Michigan Court of Appeals further noted that:

> This ruling allowed defendant to offer the same substantive defense that he sought without admitting evidence of the sexually inappropriate conduct with Allmendinger's daughter. It was the fact of the argument itself that was highly probative of the theory of defense. Any evidence of the substance of the conversation between defendant and Allmendinger was only marginally, additionally probative of the facts defendant ultimately sought to prove. However, the substance was highly prejudicial because it painted Allmendinger as a pervert with a history of sexually inappropriate behavior with his minor daughter. Such evidence would have distracted or biased the jury against Allmendinger, thus injecting extraneous considerations into the merits of the trial. There would have been a serious danger that "marginally probative evidence [would] be given undue or preemptive weight by the jury.
>
> *Murray,* Slip. Op. at * 3-4 (internal citations omitted).

The Michigan Court of Appeals concluded that M.R.E. 403 barred the admission of the prior inappropriate sexual conduct between the victim and his daughter because this evidence was more prejudicial than probative. *Id.* at * 4.

7

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (internal citation omitted). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the

evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003). Additionally, "the Supreme Court has made it perfectly clear that the right to present a 'complete' defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions." *Id.* at p. 512.

The Michigan Court of Appeals upheld the exclusion of evidence concerning the victim's inappropriate sexual contact with his daughter on the ground that it was more prejudicial than probative and hence barred by M.R.E. 403. Although the federal constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006)(citing Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904)). In the present case, it was not unreasonable for the state trial court to exclude, as more prejudicial than probative, evidence that the victim had inappropriate sexual contact with his minor daughter, because this evidence would have created a substantial danger of unfair prejudice, namely, a risk that the jury would consider acquitting petitioner not because they believed that he was innocent of the assault, but from a sentiment that the victim deserved to be assaulted. *See Rockwell,* 341 F. 3d at 513. In addition to the danger of unfair prejudice, evidence that the victim had improper sexual contact with his daughter presented a risk of undue delay and confusion of the issues, particularly, if the victim or

9

the prosecutor decided to dispute this allegation. *Id.*

Moreover, although petitioner was prohibited from introducing evidence that the victim had engaged in sexually inappropriate behavior with his daughter, he was not prevented from presenting his self-defense claim. Petitioner was permitted to introduce evidence that he and the victim had engaged in a heated argument about a topic that the two had discussed many times, that this lead to a confrontation in which petitioner claims that the victim was the initial aggressor, and that petitioner had to use force to defend himself. Exclusion of the evidence concerning the victim's prior sexual conduct with his daughter did not go to the "essence" of petitioner's self-defense claim, but involved a mere " detail-an important detail, to be sure, but a detail nonetheless." *Rockwell,* 341 F. 3d at 513.

The trial court's exclusion of testimony about the victim's prior sexual misconduct with his daughter was not so egregious that it effectively denied petitioner a fair trial, in light of the fact that petitioner was not completely barred from presenting testimony that there had been an argument between himself and the victim which escalated to an altercation where the victim was the initial aggressor, so as to establish that petitioner acted in self-defense when he stabbed the victim. *See Fleming v. Metrish*, 556 F. 3d 520, 535-36 (6th Cir. 2009). Petitioner is not entitled to habeas relief on his first claim.

**B.  Claim # 2.  The ineffective assistance of counsel claim.**

In his second claim, petitioner alleges that his trial counsel was ineffective for failing to object when an investigating officer, Trooper Christopher Corriveau of the Michigan State Police, offered an opinion that petitioner was guilty of the offense or untruthful concerning his version of the events.

Trooper Christopher Corriveau testified that he questioned petitioner following his arrest, and that petitioner had indicated that the victim got on top of petitioner, began to beat him, before petitioner stabbed the victim to defend himself. Corriveau told petitioner that the victim reported being stabbed while he was sitting on the couch, and that the police were going to investigate the crime scene. Petitioner then stated "well then I pushed him off of me. I pushed him on the couch and then I stabbed him". (Tr. 5/5/09, pp. 231-233).

On cross-examination, Corriveau testified:

[Q]uite frankly I was trying to get a correct statement from Mr. Murray. It's not uncommon for us to, lack of a better word, bluff or lie sometimes to, to a defendant. So I was trying to see if he would change his statement or if his statement was more consistent with Mr. - with the victim's statement and so I was trying to clarify it.

(*Id.,* pp. 251).

On re-direct examination, the following exchange occurred between the prosecutor and Trooper Corriveau without objection:

Q: (by prosecutor): Now Mr. Gatesman [defense counsel] asked you about when you confronted the defendant about the fact that you were going to be processing the scene and you said that sometimes you might bluff and say hey we're going to find this out so you better be honest.

A: That's correct.

Q: And I think you said that you want to see if a person's going to change their story once you say hey you got to be honest.

A: That's correct.

Q: Why do you do that?

A: Because I want to see if they're telling me the truth. A truthful person has one story, there's no other story, it's the truth. They remember it one way and they recall how it happened and they're not going to change their story.

> If I tell them well I'm going to check the evidence a truthful person would say okay go ahead check the evidence my story's still the same. Now if I tell you that I'm going to check the evidence and you change your story it indicates to me that you're not telling the truth.

(*Id.,* pp.260-61).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel

13

may have had for proceeding as he or she did. *See Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" three years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner is not entitled to habeas relief on this claim for two reasons. First, as the Michigan Court of Appeals indicated in rejecting petitioner's claim, *See Murray,* Slip. Op. at * 4, counsel is presumed effective and counsel's failure to object was reasonable trial strategy. When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). In the present case, counsel may very well have made a strategic decision not to object to Tropper Corriveau's testimony, so as to avoid bringing undue attention to the testimony. *See Cobb v. Perini,* 832 F.2d 342, 347-48 (6th Cir. 1987); *See also Engesser v. Dooley,* 457 F.3d 731, 738-39 (8th Cir. 2006)(defense counsel's conduct of not objecting to prosecutor's closing argument in vehicular homicide prosecution alluding to police officer's opinion testimony that the petitioner had lied was reasonable trial strategy, and therefore was not ineffective assistance; counsel decided not to object to avoid any emphasis on the opinion testimony).

14

Secondly, as the Michigan Court of Appeals further indicated in rejecting petitioner's claim, *Murray,* Slip. Op. at * 4, petitioner was not prejudiced by counsel's failure to object to Trooper Corriveau's testimony, because the challenged testimony was isolated and only commented indirectly on petitioner's credibility.

Thirdly, even if counsel were deficient in failing to object to any improper opinion by Trooper Corriveau about the truthfulness of petitioner's statement, petitioner was not prejudiced because the jury would not have believed petitioner's self-defense story even in the absence of Trooper Corriveau's allegedly improper opinion testimony. *See Mays v. Chandler,* 342 Fed. Appx. 159, 169-70 (6th Cir. 2009). In addition to the victim's testimony that petitioner attacked him and that the stabbing was unprovoked, Dr. Chet Morrison, a trauma and critical care surgeon at Sparrow Hospital, and the attending physician who reviewed the victim's medical records the day after he arrived in the hospital, testified to the extent of the victim's injuries and further testified that not only were the victim's injuries consistent with being stabbed, they were consistent with the victim's version of the incident, namely, being stabbed from behind. Moreover, in light of the inconsistency of petitioner's own statements to Trooper Corriveau, the jurors would have most likely doubted the truth of petitioner's inconsistent statements regardless of whether the officer gave an opinion as to petitioner's truthfulness. *See e.g. U.S. v. Pino-Noriega,* 189 F. 3d 1089, 1097 (9th Cir. 1999). Finally, petitioner was not deprived of a fair trial, because the jury was instructed to judge a police officer's testimony by the same standard as the testimony of any other witness. *Murray,* Slip. Op. at * 4. *See e.g. Norton v. Boynton,* No. 2011 WL 282433, * 8 (E.D. Mich. January 26, 2011). Thus, counsel's failure to object to the allegedly improper opinion testimony as to his credibility did not prejudice petitioner,

so as to entitle him to relief.

### C. Claim # 3. The *Brady* claim.

In his final claim, petitioner alleges that his right to a fair trial was violated because the prosecutor failed to disclose to petitioner prior to trial that Trooper Todd Parsons had been convicted in 2006 of making a false report of a misdemeanor. Trooper Parsons testified that the victim's injuries were consistent with his version of the stabbing, which, petitioner argues, encouraged the jury to accept the victim's testimony as true and reject petitioner's self-defense claim. Petitioner argues that had it been disclosed to the defense in a timely fashion, Trooper Parsons' conviction could have been used to impeach Parsons' credibility at trial and lessen the impact his testimony had in bolstering the victim's testimony.

The Michigan Court of Appeals rejected petitioner's claim, finding that Trooper Parsons' testimony was not material to petitioner's conviction in light of additional evidence that corroborated the victim's story:

> Here, Dr. Chet Morrison, a trauma and critical care surgeon at Sparrow Hospital, and the attending physician who reviewed Allmendinger's medical records the day after he arrived in the hospital, testified to the extent of Allmendinger's injuries. He further testified that Allmendinger's injuries were consistent with being stabbed, and specifically that they were consistent with Allmendinger's version of the incident. Thus, even if defendant had been able to impeach Parsons' credibility with evidence of his criminal conviction, the evidence would not have affected Dr. Morrison's testimony, and the jury still would have heard testimony that Allmendinger's wounds were consistent with his version of the facts. Moreover, as stated previously, the jury presumably followed the numerous instructions regarding witness credibility. Thus, we conclude that defendant has not shown that the evidence of Parsons' conviction was so significant that it would have put the entire case in such a new light that it undermined the confidence in the jury verdict. Accordingly, defendant has not satisfied the fourth element to establishing a violation of *Brady*[,].

*Murray,* Slip. Op. at * 5-6 (internal citations omitted).

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388 (6th Cir. 2002).

Petitioner claims that the prosecutor violated *Brady* by withholding Trooper Parsons' conviction for making a false report of a misdemeanor, which could have been used to impeach Parsons' credibility. Evidence that impeaches a witness "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012)(citing *United States v. Agurs*, 427 U.S. 97, 112–113, and n. 21 (1976)). Impeachment evidence may be considered to be material where the witness in question supplies the only evidence linking the defendant to the crime or the only evidence of an essential element of the offense. *See United States v. Avellino,* 136 F. 3d 249, 256 (2nd Cir. 1998); *Lyon v. Senkowski,* 109 F. Supp. 2d 125, 139 (W.D.N.Y.

2000). The Sixth Circuit has noted that: "[C]onsiderable authority from the Supreme Court and our court indicates that a defendant suffers prejudice from the withholding of favorable impeachment evidence when the prosecution's case hinges on the testimony of one witness." *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009)(internal citations omitted).

In the present case, Trooper Parsons' prior false report of a misdemeanor conviction was not material to petitioner's guilt because he was not the only witness to bolster the victim's version of the stabbing. Trooper Parsons testified that when he interviewed the victim at the hospital after the stabbing, he observed the victim's hand and arm injuries, which he characterized as "defensive type wounds." (Tr. 5/5/09, pp. 47, 54). Parsons, however, conceded that a cut on the victim's arm could also be consistent with him having assaulted petitioner. Trooper Parsons further admitted that one could not tell merely from observing the victim's wounds when they were inflicted and could only make that determination from speaking with the victim. (*Id.*, pp. 67-70). On redirect examination, Trooper Parsons testified that the victim's statement to him about how the stabbing had taken place was consistent with what Trooper Parsons had observed in regards to the victim's injuries. (*Id.,* pp. 76-77).

Dr. Morrison testified that the stab wound to the victim's chest was consistent with being stabbed from behind. Dr. Morrison explained that people who are stabbed from behind tend to receive their wounds on the same side of their body as their assailant's hand. Dr. Morrison opined that most probably the blade came from the right to the left, although he conceded that the injury could have occurred from a glancing blow where petitioner had been facing the victim and off to one side. (Tr. 5/5/09, pp. 171-73, 176-77).

Trooper Parsons' testimony was not material to petitioner's conviction because, as

petitioner himself admits, Trooper Parsons' testimony that the victim's injuries were consistent with his version of the stabbing was corroborated by Dr. Morrison's more damaging testimony that the victim's injuries were consistent with being stabbed from behind.[1] Contrary to petitioner's assertions, Trooper Parsons' testimony "was not the central piece of evidence holding together an otherwise feeble case, but was merely one piece of a cumulative evidentiary puzzle." See Beuke v. Houk, 537 F.3d 618, 636 (6th Cir. 2008). Because the objective evidence in this case sufficiently supported a finding that petitioner did not stab the victim in self-defense, the suppression of Trooper Parsons' false police report conviction does not tend to undermine this Court's confidence in the verdict. *Id.* Petitioner is not entitled to habeas relief on his third claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district

---

[1] *See* Application for Leave to Appeal to the Michigan Supreme Court, p. 30, attached to the Petition for Writ of Habeas Corpus.

court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 30, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 30, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager